The final case this morning is number 17-2462, Adrea v. Barnes & Noble, Inc. Mr. Ederer. Yes, good morning, Your Honors. May it please the Court. May I say most respectfully, if ever there was a case in which a defendant in a patent litigation who did not prevail on every infringement claim should be found to be the prevailing party. Why are we here in a dispute over $45,000 when the attorney's fees for the client must far exceed that? I'm sorry, I didn't get that. Why are we here over a dispute involving $45,000 when the attorney's fees for the appeal must be two or three times that? Yeah, well, the answer to that question, Your Honor, is that our client feels very strongly that the law was incorrectly applied and that it should be declared the prevailing party. It's more about the, it's not about the $45,000. We've already paid the judgment in this case, which was well more than that. It's about the principle of applying the law correctly. There's got to be more than that here. I mean, $45,000, the appeal costs more than that. You know you're taking our time and asking the court to spend all this time reading briefs and getting prepared and sitting here for oral argument, and you're splitting hairs. It's either $40,000 or maybe there's a $10,000 figure here. But it doesn't even make any sense that you all haven't been able to resolve this. Well, the main focus of the appeal, there is, of course, a portion of the appeal where we talk about some of the individual costs. That's correct. But the focus of the appeal is more on the question of who was the prevailing party and whether we should be required to pay costs at all. So I do understand your point. It is a relatively small amount, but for our client, it really is a matter of principle here, because it really does feel that after all of the time that was spent in this case over a four-year period through two full trials, the end result was clear.  Well, you can put it that way, but I'd rather use the word principle than a motion, Your Honor. So I would also say that in addition to requesting that the law be applied so that this court would find that Barnes & Noble is, in fact, the prevailing party in this case, at worst, this is just the kind of mixed results case where neither party prevailed sufficiently and each party should have to bear its own costs. With respect to the secondary disputes as to the small matters, why didn't you file a motion for correction of the judgment or reconsideration to address those areas where you think the court might have inadvertently included costs that shouldn't have been included? Because again, the focus of our point here is with respect to the issue of whether or not— I suppose that's true, Your Honor, but I think that in some of those instances as well, there was simply a misapplication of the law and not necessarily just a mistake or a correction. So if we were to have made a motion for reconsideration, we would have to show that the judge failed to apply the law correctly or he overlooked the law. If it was on an issue of whether there was a mistake in the calculation, I agree with Your Honor. We could have done that. All right. Are you advocating for a rule that says every time there are mixed results there is no prevailing party? No. What we're saying here is in a case where we believe the results were in our favor, that this is the type of case where if we are not going to be declared the prevailing party in the first instance, which we believe under Federal Circuit law we should be, that since we prevailed to a greater extent than the plaintiff did, this should be a mixed results case. Is your focus on the dollar figure being less than they asked for, or what is the focus? The focus of the appeal, the main focus of the appeal, is to get a declaration that we were the prevailing party and, therefore, we do not have to pay any costs. But why does that depend on the number of patents or the amount that was recovered? I mean, as I understand it, there was only a single product here which was involved, which is the nook, right? That's correct, although there were different nook models that were the subject of the litigation. But did that, did the infringement of the various models depend on which patent was infringed? Well, as a matter of fact, Your Honor, the one patent that we were found ultimately to have infringed was a patent that related to a feature called the shop feature. And the question was whether or not that shop feature was, which provided information about the books that a consumer may wish to purchase, the question was whether that shop feature provided that information without accessing a web browser. We of course took the position. Did that apply to all the nook models? Sorry? Did that apply to all the nook models? No. It applied to the nook models that were being sold at the time, but by the time this case No, no. What I'm trying to understand is the patent that was found infringed, if you, as to the other patents, one of which was found invalid, the other one was found not infringed, did those cover different products than the one where infringement was found? No. What I'm saying is that No. It's the same product. It's the same product, but the patent that was found to have been infringed only applied to certain models, whereas the other patents applied more broadly to all nook models that were available at the time. So for example, one of the patents, the patent that was found to be invalid was the lending patent. The Barnes & Noble nooks all had a feature called Lend Me, whereby they, the user could lend the books that they had downloaded to their system to their friends, who had a nook as well, for a certain period of time. That applied to all Barnes & Noble models, but the patent that was found to have infringed only applied to certain models that didn't have a web browser. By now, by the time of the second trial in this case, all nook models had a web browser. So that patent was, as far as we're concerned, the least important patent. And the third patent that we were found not to But it's still a patent that you were found to infringe and to have caused damage, right? Correct. But I think you have to, the idea is to weigh the respective successes of the party to see which parties substantially prevailed. And I think if you do that here, we're not saying that the infringement was of no consequence. Of course it was of consequence. What we're saying is that of the three patents, that was the least important from the standpoint of the commercialization of these products. And the other patents, if we were found to have infringed, we would have had to change a very significant feature. And the third patent that we were not found to have infringed was a patent that talked about how books were sent from the cloud down to the user's nooks. I thought that our case law and prevailing party said that the party has to receive at least some relief on the merits and that the relief must materially alter the relationship between the parties by modifying one party's behavior in a way that directly benefits the opposing party. For one patent, even if you don't think it's the most important patent, how is that standard not met? I'm not here to suggest that that statement is not met. What I'm here to say is that Barnes & Noble II, by virtue of the fact that the patent was invalidated, also is eligible under that same test, which is what I call the Shum test. Right in the Shum case, it says that the invalidation of a patent also constitutes a material alteration. When it comes to costs, the court has the authority to say, well, there is one prevailing party, but I'm still going to choose not to award costs. But in this particular case, the courts don't say there are two prevailing parties and we divide costs. Correct. And that's not what I'm here to suggest. What I'm here to suggest is that when there are two parties that are both eligible to be the prevailing party, then the court must follow and weigh the respective successes, which is the case of SSL versus... Just because some courts have chosen not to award costs in somewhat similar circumstances doesn't mean this court had to make that choice. No, but I think there's two issues here that are being conflated a little bit. The first issue is, who is the prevailing party when both parties are eligible to be the prevailing party? And in that case, you have to follow the SSL test and weigh the respective successes of the parties. And we respectfully submit that if you weigh the respective successes of the parties, Barnes & Noble by far succeeded to a greater extent than Adrea did. But who's better equipped to decide what the ultimate respective successes of the trial judge who sat through years of these proceedings? Well, I don't think that's the correct analysis here. First of all, I don't think the judge did do a proper analysis under the law. And by the way, on the second issue, the question of whether he exercised his discretion in this mixed judgments case to deny costs, notwithstanding the fact that Adrea may have been the technical prevailing party, the judge didn't even post-trial motion for review. That issue he didn't even address. And as far as his determination with respect to who was the prevailing party from the standpoint of who prevailed more greatly, if you will, he made a mistake. Because one of the things he said was that — Well, it's not a straight-up who prevailed more greatly, is it? It's a weighing of the respective successes to determine who was the substantial prevailing party. That is the test of this circuit. And we're entitled to a de novo review of that issue. And if you apply that test, we contend very strongly, if you look at all the results here, including not only the number of patents on which the parties prevailed, but also how the damage award worked out, starting from a $12 million demand down to $1.33 million at the first trial when two patents were found to have been infringed, down to $266,000 on the second trial for damages, I think you can say that if you combine both the damage award and the results on the patents, we were the substantial prevailing party. But one other thing I'd like to say here is that one of the things that the district court relied on was the fact that we had substantially modified our devices after having been found to have infringed the patent in question. And in making that reference, in his opinion, he was referring to Barnes & Noble's response to ADREA's request for supplemental damages. As I mentioned before, we had come out with a whole new range of nooks by the time the second trial took place in 2016. And ADREA made a motion for supplemental damages, saying all of your new products have the same feature as your old products, and therefore they should be folded in to the damage award. And we came back... You had said that the district court didn't use its discretion in analyzing the cost issues, and I know this is different, but what about where the court said it has discretion to deny costs, where the award would be inequitable, and then says, for these particular costs, some deposition testimony, I'm not going to award the cost because these depositions related to issues on which ADREA did not win, I think, or something to that effect. And why isn't that appropriate in this circumstance to address the kind of concerns you have, where you're talking about possibly there being a situation where there wasn't... The party didn't prevail on all issues, and the court has discretion? Well, I think what you just said was a situation where the judge was looking at an individual cost that was at issue. And what we're saying is that what he failed to address is the question of whether in a mixed results case like this one, it would have been inequitable for either party to have to pay costs. He did not address that issue whatsoever. He ignored it. And so that's our second point. Our first point is we're arguing that under this court's de novo review, we should be declared the prevailing party. The second issue is that the court abused its discretion by failing to address the mixed results question whatsoever in the total context, not in regard to each individual cost that was at issue. Okay. You want to save your rebuttal time here? Yes. Mr. Brown? Thank you, Your Honor. May it please the court? There's a $10,000 error here, right? There's probably a $10,000 error here. I agree with that. If we were to affirm here, would you agree that you would stipulate to correct the judgment to take out the $10,000? Yes, Your Honor. Okay. Your Honor. Is there something else we're missing? Why are we here? We're here because of Barnes & Noble's view of this case as being one that they want to, I shouldn't say what they want. They have, throughout this litigation, made it clear that they don't want to settle anything. They don't want to agree to anything. I mean, my impression has been that they wanted to make the litigation as painful and expensive as they could. Nothing more. Okay. That was probably an unfair question. Go ahead. Okay. A couple of points that were raised in questions on Mr. Ederer's presentation. The products that were accused of infringing these, the patent that was found valid and infringed, are the same products that were accused of infringing the other patents. They're not two separate sets of products. All of the products that were involved were accused of and found to infringe the patent that survived. Mr. Ederer said that he does not contest the judge's conclusion that we met the test that was used by the Supreme Court in the Ferrari V. Hobby decision. He seemed to agree that we met that test. That should be the end of the discussion of whether we are properly found a prevailing party. This court has consistently followed the Ferrari test on prevailing party. It adapted that test to patent infringement cases. In the Manildra-Milling case, in Manildra-Milling, it faced a situation where a plaintiff had not obtained a money judgment for patent infringement and pointed out that the district court was faced with the question of whether a plaintiff could still be a prevailing party without having obtained a money judgment. It determined that it could, given the complete success on the patent issues in that case. The next case that this court cited on this issue was the Shum case. In that case, both parties had filed bills of costs. That is unlike this case, although Mr. Ederer here is claiming that they were entitled to be considered as a prevailing party. They did not even file a bill of costs, claiming to be a prevailing party in the district court. Only Ederer filed a bill of costs. But in Shum, both parties had filed a bill of costs. The plaintiff had, in that case, sued a former business partner, claiming that he should have been named as a co-inventor and that he should have received a share of the takings on the technology that his partner had then taken to Intel. Both parties filed bills of costs. The plaintiff obtained only a declaration of co-inventorship on certain patents. The court held that that was not sufficient for a prevailing party status and that the court concluded that that did not provide to the under contractual arrangements that preexisted the case. And so he did not meet the test that was announced in Farrar and that had been followed in this court. In the SSL services versus Citrix case, there wasn't actually a weighing of the relative successes of the parties. The court looked at a case where there had been two patents asserted. One was found valid and infringed and one was found invalid. And the court looked at the results and noted that the plaintiff had not prevailed on all claims, but said that it was dispositive that the plaintiff had obtained a money judgment that met the test that had been set out in Farrar and followed by this court consistently. So Adria disagreed with the basic contention that Barnes & Noble had made that there is a weighing to be done by the district court in determining who is the prevailing party, especially in a case where the plaintiff is a patent infringement plaintiff who has obtained a money judgment for patent infringement. The district court did explain its exercise of discretion. It went through the history of the case. It fairly carefully looked at each item of costs about which concerns had been expressed and it explained why it was allowing some costs to Adria and not allowing other costs. The court issued a nine-page decision and fairly carefully looked at each concern that the parties had raised. As the court has indicated, there is what looks like might be a mistake in terms of the award relating to the transcript costs. I would only point out that the court's comment that it was awarding fees in connection with the 2014 trial was in response to a comment from the clerk and the district court was responding to a comment about not allowing the costs for the 2014. But the $10,000 relates to the disquettes and the real time. So it's a little confusing as to what the $10,000 is, but it's the disquettes and the real time and the challenge. The stuff you didn't ask for. Well, the stuff that we did not ask for in the request to review the clerk's initial taxation of costs. We had asked for it initially. But you weren't arguing before the district court that you were entitled to that. I beg your pardon? You were not arguing to the district court as opposed to the clerk that you were entitled to that. We did not make that argument in the motion to the district court. But you've agreed to correct that? Absolutely, Your Honor. OK. Anything further? I have nothing further to add. OK. Thank you. Mr. Ederer. Just very briefly, Your Honor. First of all, I take issue with Mr. Brown's statement that Barnes & Noble is trying to make this as painful as possible. We were the parties who were sued for $12.4 million for three counts of patent infringement. You don't need to respond to that. That was not a fair question for me to ask. Secondly, and I think this is more germane to what we're here today to talk about, Mr. Brown misdescribed the holding in SSL services versus Citrix systems. First of all, that case specifically says that the plaintiff was declared the prevailing party, but only, quote, of the party's respective successes, meaning that this court did do a weighing of the relative successes of the parties to determine who should be declared the prevailing party, even though both parties were eligible to be declared the prevailing party. And he also misstated the outcome of that case because he said that there was a finding of invalidity. That's not correct. What happened in that case was that plaintiff prevailed on one of the patents and was awarded $15 million in damages, including an enhancement for willfulness. The defendant prevailed on the other patent by proving only non-infringement, but defendant's invalidity claim was rejected. That's quite a significant difference from our situation where the ultimate damage award was reduced from millions of dollars to $260,000, and there was a finding of invalidity. So I think if you do the weighing that SSL and other cases say should be done, and which should be done de novo, Barnes & Noble should be found to be the prevailing party. Thank you, Your Honor. Thank you, Mr. Erdrich. Thank both counsel, the case is submitted. That concludes our session for today.